# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| COWBOYS FOR LIFE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | NO. CIV-13-0086-HE |
| | ) | |
| BRIAN K. SAMPSON, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs, Cowboys for Life ("CFL"),[1] and Jennifer M. Ortman and Joshua R. Bowman, officers of "CFL," filed this action against, among others, Burns Hargis, the president of Oklahoma State University ("OSU"), in his official and individual capacities, Jason Ramsey, the Chief Executive Officer of the Board of Regents of OSU, in his official capacity, the members of the Board of Regents of OSU ("Regents"), in their official capacities, and certain students and Does 1-30, who are members of the Student Government Association at OSU,[2] in their official and individual capacities. Plaintiffs assert violations of their constitutional rights to free speech, freedom from retaliation and unconstitutional conditions, equal protection and due process and seek monetary, declaratory and injunctive relief. Defendants President Hargis, Jason Ramsey, the Board of Regents and the named members of the Student Government Association ("SGA") have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

---

[1]*Cowboys for Life is a registered student organization at Oklahoma State University.*

[2]*The named student defendants will be collectively referred to as "SGA defendants."*

When considering whether a plaintiff's claims should be dismissed under Fed.R.Civ.P. 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving party. Anderson v. Suiters, 499 F.3d 1228, 1232 (10th Cir. 2007). The question is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint must provide sufficient factual allegations to "raise a right to relief above the speculative level." *Id.* at 555.

Considering plaintiffs' claims against defendants under this standard, the court concludes defendants' motion should be granted in part and denied in part.

## Background

Plaintiffs' claims arise out of an event CFA held with Justice for All ("JFA") on the OSU campus from October 24-26, 2012. Plaintiffs allege that defendants prohibited them from "holding a pro-life display in a high-traffic area of campus, relegated Plaintiffs to less-traveled areas, imposed *ad hoc* restrictions on Plaintiffs' expression that they did not apply to similarly situated students, and interfered with Plaintiffs' efforts to distribute literature and display hand-held signs in the outdoor venues of campus." Complaint, ¶3. They also allege that they were required to "post 'warning signs' around their display" and that, "[a]fter the display, Defendants coordinated and launched a retaliatory investigation of Plaintiffs, claiming that they had violated the *Student Code of Conduct* as they expressed their pro-life beliefs and viewpoints." *Id.*

Plaintiffs contend President Hargis is liable due to his "ultimate[] responsib[ility] for

2

administration and policymaking for OSU." *Id.* at ¶26. They allege that he "not only authorized, approved, or implemented the policies used to deny Cowboys for Life access to highly trafficked areas of campus and to restrict its ability to leaflet peacefully near the Student Union, but he also failed to stop OSU officials from applying those policies to Cowboys for Life." *Id.* at ¶25. The Regents are allegedly liable based on their similar responsibilities for "adopt[ing] and authoriz[ing] policies that govern students at Oklahoma State University . . .and [overseeing the] operation of OSU." *Id.* at ¶27. Plaintiffs have sued the SGA defendants based on the SGA Senate's passage of a resolution on October 31, 2012, which recommended that the Office of Student Conduct investigate whether CFL violated the *Student Code of Conduct* during its October event with JFA.

Plaintiffs claim it is OSU policy that OSU officials have "unbridled discretion over whether, when and where students and student organizations may distribute literature in the outdoor areas of campus, " *id.* at ¶36,"whether and where students and student organizations may hold events outdoors," *id.* at ¶47, and whether a student organization may "reserve an outdoor venue on campus for an event that involves an off-campus organization." *Id.* at ¶58. They allege OSU officials, including defendants, have used that discretion to "restrict pro-life speech" and "disrupt the efforts of pro-life students and student organizations to distribute literature peacefully on campus." *Id.* at ¶62, 63.

In their first cause of action plaintiffs assert that defendants' "Facilities Use Policy

3

and Literature Distribution Policy[3] and their practice of restricting disfavored speech and literature distribution to distant and sparsely traveled areas of campus" violate their First Amendment right to free speech. *Id.* at ¶255. They claim the policies grant OSU officials "unbridled discretion to discriminate against student expression based on its content or viewpoint," *id.* at ¶267, are unconstitutionally vague and overbroad, serve as a prior restraint, fail to protect against content or viewpoint based discrimination and substantially burden plaintiffs' free speech rights.

In their second cause of action plaintiffs claim that defendants, by requiring them to place warning signs around their displays, forced them to engage in compelled speech in violation of their First Amendment rights. In their third cause of action plaintiffs claim defendants retaliated against them because they exercised their free speech rights, by allegedly arranging for them to be investigated and then conducting that investigation. In their fourth cause of action plaintiffs claim defendants placed unconstitutional conditions or limitations on their right to free speech. Plaintiffs assert in their fifth cause of action that defendants' facilities use and literature distribution policies, because they are vague, ambiguous and include no criteria to guide administrators when applying them, also violate their right to due process of law. In their sixth cause of action plaintiffs allege an equal protection violation based on defendants' asserted disparate treatment of them as compared to other student organizations who were engaged in expressive activities. Plaintiffs seek

---

[3]*Plaintiffs claim the policies violate the First Amendment both on their face and as applied.*

4

declaratory and injunctive relief, nominal or compensatory damages and attorney's fees.[4]

Analysis[5]

Initially the court notes that plaintiffs fail to distinguish among defendants with respect to their six claims. The court assumes all claims are asserted against all defendants except for the SGA defendants. Under the alleged facts, the only plausible claim asserted against the student defendants is plaintiffs' retaliation claim.

President Hargis contends the claims asserted against him in his individual capacity should be dismissed because plaintiffs have failed to plead that he personally participated in the alleged constitutional deprivations and because he is entitled to qualified immunity. The court agrees that plaintiffs' individual capacity claims against President Hargis fail as plaintiffs have not alleged sufficient facts to show that he acted with the required mental state.[6]

It is well established that "when a plaintiff sues an official under . . .§ 1983 for conduct arising from his or her superintendent responsibilities, the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution,

---

[4]*In their complaint plaintiffs allege they have suffered "economic injury," but they do not seek to be compensated for such in their prayer for relief and they have not alleged facts demonstrating any economic injury.*

[5]*In their brief defendants string cite cases stating general principles of law, but fail to show how those cases specifically apply or guide the court's decision here.*

[6]*The court seriously doubts plaintiffs have sufficiently pleaded that President Hargis personally participated in the alleged retaliation against plaintiffs and also questions whether his level of involvement is enough to sustain plaintiffs' other claims insofar as they are asserted against him in his individual capacity.*

5

but that the official by virtue of his own conduct and state of mind did so as well." Dodds v. Richardson, 614 F.3d 1185, 1198 (10th Cir. 2010); *see* Pahls v. Thomas, 718 F.3d 1210, 1228-31 (10th Cir. 2013). Iqbal "requires [§ 1983] plaintiffs prove each defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation." Dodds, 614 F.3d at 1200. Plaintiffs' allegations fall far short of pleading or stating a factual basis for concluding that President Hargis acted "with the constitutionally requisite state of mind" with respect to any of their claims. Pahls, 718 F.3d at 1228. Therefore, plaintiffs' claims against President Hargis in his individual capacity will be dismissed.[7]

Plaintiffs have, however, sufficiently stated claims against President Hargis, Jason Ramsey and the Regents in their official capacities to hold them accountable for the alleged constitutional deprivations. Plaintiffs acknowledge that the Eleventh Amendment bars them from recovering damages from these individuals in their official capacities, but does not affect their claims for declaratory or injunctive relief. While defendants raise the issue of mootness with respect to plaintiffs' requests for equitable relief, they inadequately develop the argument for the court to consider it.

The remaining issue consists of plaintiffs' retaliation claim against the SGA defendants. On October 31, 2012, the Senate of OSU's Student Government Association

---

[7]*While the court does not have to consider President Hargis' defense of qualified immunity, it notes that he fails to develop his argument that plaintiffs' First Amendment right was not clearly established because "the law is especially unclear with regard to the limited public forum principles in First Amendment jurisprudence," Doc. #76, p. 20, or any other basis for qualified immunity.*

6

passed a resolution recommending that the Office of Student Conduct, "with the assistance and cooperation of Student Affairs and Campus Life," investigate whether CFL violated the *Student Code of Conduct* during its October event with JFA. Doc. #1-8. Plaintiffs allege the measure was "proposed, pushed, supported, and sponsored" by defendant Sampson. Doc. #1, ¶212. The Resolution states that CFL sponsored the organization Justice for All and that JFA "failed to comply with the agreed upon terms in the permitting documents from Campus Life, namely leaving their permitted areas and displaying elsewhere to the detriment of student groups." Doc. #1-8. The proposed investigation was to "determine if Cowboys for Life were responsible, by action or negligence, for the violation of the agreed upon terms in the permit." Doc. #1-8.

Plaintiffs' retaliation claim against the SGA defendants in their individual capacities fails because the court concludes the SGA defendants are entitled to qualified immunity. The doctrine of qualified immunity is well established. It "'protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dodds, 614 F.3d at 1191 (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). As defendants have asserted the defense, the plaintiffs "bear[] the burden of satisfying a 'strict two-part test.'" *Id*. (quoting McBeth v. Himes, 598 F.3d 708, 716 (10th Cir.2010)). They "'must establish (1) that the defendant[s] violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant[s'] conduct....'" *Id.* (quoting McBeth, 598 F.3d at 716).

Plaintiff's allegations fail to demonstrate either prong. First, a question exists as to whether plaintiffs have alleged that the SGA defendants violated a constitutional right.

Plaintiffs claim the SGA defendants infringed their First Amendment rights by retaliating against them when they "recommend[ed] that the Office of Student Conduct . . . launch an investigation . . . ." Doc. #1, ¶211. Several courts have held that a bad faith investigation can be actionable retaliatory conduct under § 1983. *E.g.*, AH Aero Servs., LLC v. Ogden City, 2007 WL 2570207, at *7 (D. Utah Aug. 31, 2007) ("A reasonable jury could conclude that an ordinary person would have been chilled in this case because the Ogden City Defendants engaged in a bad faith investigation and legal harassment after OK3 complained about Fair Air."). In Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000), the Tenth Circuit stated that "'[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom.'" *Id.* at 1212 (quoting Lackey v. County of Bernalillo, 1999 WL 2461, at *3 (10th Cir. Jan.5, 1999) (unpublished)). The asserted retaliation in Worrell was not, though, an investigation, but the "withdrawal of [a] job offer." *Id.* at 1200. Lackey, quoted in Worrell, did involve an alleged retaliatory investigation. In that case a temporarily deputized Drug Enforcement Administration officer had reported to the police that the plaintiff had been involved in criminal activities and asked the police to investigate him. The plaintiff claimed the defendant had made false statements to the police in retaliation for plaintiff's constitutionally protected speech. The Tenth Circuit noted that, "[a]lthough retaliation is not expressly discussed in the Constitution, it may be

8

actionable inasmuch as governmental retaliation tends to chill citizens' exercise of their constitutional rights." Lackey,1999 WL 2461, at *3. The court then listed retaliatory conduct that could constitute an infringement of the right to free speech, including "bad faith investigation." *Id.*[8]

However, what we have here is not an investigation by the SGA defendants or allegations of false statements by those defendants to obtain an investigation, but a mere recommendation for an investigation. Notably absent from the complaint are any allegations of the students' "bad faith motivation." Rather, plaintiffs allege that "[o]n information and belief, Defendant Sampson proposed, pushed, supported, and sponsored the measure calling for an investigation into Cowboys for Life." Doc. #1, ¶212. It is defendant Sampson who then allegedly conducted the investigation and defendant Sampson who plaintiffs claim engaged in "content and viewpoint discrimination." *Id.* at ¶123.

The court is reluctant to conclude that plaintiffs have sufficiently alleged a constitutional violation by the students on the basis of dicta in Worrell and on Lackey, an unpublished and factually dissimilar case. In Rehberg v. Paulk, 611 F.3d 828 (11th Cir. 2010), *aff'd*, 132 S.Ct. 1497 (2012), the Eleventh Circuit held that a former district attorney and an investigator for the District Attorney's office were entitled to qualified immunity because the plaintiff's "right to be free from a retaliatory investigation [was] not clearly

---

[8]*The plaintiff's First Amendment retaliation claim was found lacking in Lackey, though, on the ground the plaintiff had not demonstrated that the officer's actions were "motivated by an unconstitutional animus." Lackey, 1999 WL 2461, at *4.*

established." *Id*. at 851. In reaching that decision the court noted, citing Hartman v. Moore, 547 U.S. 250, 262 n.9 (2006), that the Supreme Court had "never defined retaliatory investigation, standing alone, as a constitutional tort." *Id.*

Regardless, plaintiffs have not successfully shouldered their burden with respect to the second prong of the qualified immunity analysis. *See* Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) ("[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all."). They have not shown that "existing precedent [has] placed the ... constitutional question beyond debate." *Id*. at 2093 (internal quotations omitted). Plaintiffs have not offered case law making it "sufficiently clear that every reasonable [SGA defendant] would [have understood]" that by voting to pass the resolution recommending the investigation he or she was retaliating against plaintiffs in violation of their First Amendment rights. *Id*. (internal quotations omitted).[9] As the Supreme Court noted in Reichle, "the right allegedly violated must be established, not as a broad general proposition, , but in a particularized sense so that the contours of the right are clear to a reasonable official." *Id.* at 2094 (internal citation and quotations omitted). The

---

[9]*In other contexts, a legislator's vote to investigate someone or some thing would be absolutely protected from a claim like plaintiffs assert here. See Art. I, § 6, U. S. Constitution ("for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other Place." See also Okla. Const. Art. 5, § 22 ("Senators and Representatives ... for any speech or debate in either House, shall not be questioned in any other place."). While there appears to be no similar "speech or debate" protection explicitly available to student senators, the similarity of the roles and common understanding of the nature and role of a legislator would cut against any conclusion that the students should have known their actions to be contrary to law.*

court therefore concludes that when the SGA defendants passed their resolution in October 2012, it was not clearly established that their conduct "could give rise to a First Amendment violation." *Id.* at 2097.

Even if the SGA defendants were not entitled to qualified immunity, another basis exists for dismissing plaintiffs' retaliation claim against them in both their individual and official capacities. In their response brief plaintiffs fail to controvert defendants' assertion that the students are not "legal representatives for OSU." In other words, plaintiffs have not disputed defendants' assertion that they are not state actors and, thus, cannot be sued under § 1983.[10]

Because the SGA defendants are entitled to qualified immunity and because plaintiffs did not refute defendants' contention that the Senate of OSU's Student Government Association is not an arm of the state for purposes of § 1983, plaintiffs' retaliation claim against the SGA defendants in their individual and official capacities fails and will be dismissed with prejudice.[11] In light of this conclusion, plaintiffs' claims against the John Doe

---

[10]*If the SGA defendants could be considered "state actors," see* Dodds, *614 F.3d at 1194 n.1 ("A § 1983 plaintiff must also show that the alleged deprivation was committed by a person acting under color of state law.") (internal quotations omitted), insofar as they are sued in their official capacities they would be entitled to Eleventh Amendment immunity, which would bar plaintiffs' claims against them for monetary damages and retrospective declaratory relief. See* Meiners v. University of Kansas, *359 F.3d 1222, 1232 (10th Cir.2004) (district court correctly held that claims against state officials for back pay, monetary damages, and retrospective declaratory relief were barred by the Eleventh Amendment.). As plaintiffs have not pleaded a plausible basis for obtaining prospective injunctive relief from the SGA defendants, their claims against the SGA defendants would be dismissed even if they were subject to § 1983 liability.*

[11]*While the court questions whether anyone but Sampson can be held accountable for the alleged retaliation, defendants did not make that argument, so the claim will not be dismissed as to*

11

defendants also will be dismissed.

Accordingly, defendants' motion to dismiss [Doc. #76] is **GRANTED** with respect to plaintiffs' claims against defendant Hargis in his individual capacity and their claim against the members of the Student Government Association at OSU, including the John Doe defendants. Plaintiffs' claims against President Hargis are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs claims against the SGA defendants and John Doe defendants are **DISMISSED WITH PREJUDICE**. In all other respects defendants' motion is **DENIED**.

**IT IS SO ORDERED**.

Dated this 21st day of October, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

*anyone but the SGA defendants and John Doe defendants.*